Submitted on briefs March 8, affirmed April 12, 1921.

## HENRY *v.* POSTAL TELEGRAPH CO.

### (197 Pac. 258.)

**Damages — Permanency of Injury may be Shown Under General Allegation of Damages.**

1. The permanency of an injury may be shown under a general allegation of damages, without more explicit pleading.

**Damages—Complaint Held not to Exclude Evidence as to Permanency of Injuries—"May."**

2. In an action against a telegraph company for injuries to plaintiff when run into by defendant's messenger boy on a bicycle, complaint, generally describing plaintiff's injuries, and stating her knee would be weak for a long time, and the patella more liable to dislocation, also averring, "These conditions may be of a permanent character," *held* sufficient to admit evidence of the permanency of the injury; "may" sometimes importing ability, competency, possibility, or probability, and not limiting the legal effect of the allegation of general damages.

**Appeal and Error—New Trial—Refusal of New Trial Discretionary.**

3. Refusal to grant new trial is a matter in the sound discretion of the court, and will not be reviewed on appeal except for abuse.

**New Trial—Disregard of Statement Made in Effort to Compromise was not Ground.**

4. Statement of counsel for plaintiff, suing for injuries made in course of negotiations for settlement of the claim that plaintiff was not making a claim for serious permanent injury, though she was not yet free from pain or inconvenience, was not binding when no settlement was reached, so that disregard thereof by plaintiff at trial did not entitle defendant to new trial for surprise.

From Multnomah: ROBERT TUCKER, Judge.

In Banc.

This is an action to recover damages for alleged personal injuries suffered by plaintiff by reason of the fault of an employee of defendant in negligently and recklessly running against her with a bicycle. The allegations material here are as follows:

1. Right to recover damages for future disability in absence of special allegation, see note in 20 **Ann. Cas.** 116.

"That on or about the eighteenth day of July, 1916, in the City of Portland, Oregon, between the hours of 9 and 10 o'clock in the forenoon, the plaintiff was crossing Washington Street, from the north side to the south side thereof, at or near the intersection of said Washington Street with Sixth Street, and was using due care and watchfulness in crossing said street, when she was suddenly, and without any warning, and by reason of the speed at which he was traveling, and on account of his inattention, negligently, and recklessly and carelessly, and without fault on her part, run into and over by a messenger boy on a bicycle or motorcycle; said messenger then and there being a servant of and employed by said defendant corporation, and in the discharge of his duty; and by reason of being so run into by said messenger boy, plaintiff was violently thrown to the pavement, and severely bruised in and about her head and limbs and body, and the patella of her left knee was dislocated and thrust several inches out of place, and the ligaments of said patella were wrenched and strained and torn; and that by reason of said injuries, caused by the recklessness and negligence of the defendant as aforesaid, the plaintiff suffered great pain in her head, limbs, and body, and particularly in and about the left knee, and was confined to bed at the hospital for about ten days, and was confined to her home for several weeks.

"That after said injury the plaintiff was for several months under the care of physicians, and was compelled to be treated for said injuries, and particularly the injury to her knee, and she is informed and believes, and therefore alleges, that said knee will be weak for a long time, and that the patella will be more liable to dislocation than prior to said injury, and that these conditions may be of a permanent character; and by reason of the aforesaid injuries, and the pain and suffering incident thereto, plaintiff has been damaged in the sum of fifteen hundred ($1500) dollars."

Then follows averments as to loss of employment, physicians' services and hospital fees, not material here.

The answer was a general denial, and a plea of contributory negligence. On the trial the court at the request of defendant gave the following instruction:

"If you should come to the question of damages, before you would be warranted in allowing the plaintiff any sum by way of compensation for an alleged permanent injury, you must be reasonably certain, from a preponderance of the evidence, that the plaintiff has sustained permanent injury, and it is not enough that you may believe that permanent injury is possible."

The court also gave the following instructions, which were excepted to by the defendant:

"If you should reach the conclusion that the plaintiff is entitled to recover in this case, the next consideration would be the question of damages. The true measure of damages in case of this kind is compensation; what sum will fully, fairly, and justly compensate her for the physical pain, if any, that she has endured or will endure in the future, and what sum will fairly, fully, and justly compensate her for the physical injuries she has sustained, if any, as a direct, natural, and proximate result of this particular injury.

"Gentlemen of the jury, nothing should be awarded as punishment, nothing out of motives of sympathy or prejudice, but your award of damages should be based solely on the theory of compensation.

"Before you award damages for a permanent injury, you should be satisfied by a preponderance of the evidence that the injuries are permanent, but if you find they are permanent, then your award should be on the basis of permanency. If you find that the injuries she has sustained are temporary, then your award should be on the basis of temporary

injuries. But whether temporary or permanent, the limit and measure of compensation should be the true rule and guide in arriving at damages in cases of this kind. That is so. far as the general damages are concerned."

At the close of the charge the following colloquy ensued between court and counsel:

"Mr. Nelson: The only exception, your Honor, was in reference to damages: that in case the jury should find for the plaintiff you state that they could consider the physical pain that may be suffered in fact, also permanent injury; there is no claim for either of those in the complaint; the plaintiff does not claim permanent injury. In fact, Mr. Magill has disavowed that to us.

"The Court: I thought that was claimed. If it isn't, we will cover that.

"Mr. Magill: The allegation is at the bottom of page 2.

"The Court: You say, 'May be of a permanent character.'

"Mr. Nelson: 'May be of a permanent character.' Well, under the law it must be.

"The Court: Well, I stated to the jury,—I have stated to the jury, and I do now state to the jury, that unless there is shown by the plaintiff by a preponderance of the evidence that permanent injuries exist that they would not be entitled to any damages for a permanent injury.

"Mr. Nelson: Well, your Honor, in this action I want to state, I want to make tender here of a showing that we asked for leave, or were to ask for leave, to examine the plaintiff, and waived that on assurance of counsel in writing that she did not claim permanent injury, and I think in fairness that that ought not to be in the case, in the instructions of the jury. I think they ought not to be permitted to consider anything of that sort.

"Mr. Magill: I think there would be quite a controversy over that, if the court please. I am sorry to see it arise.

"The Court: Well, I will state to the jury that the allegations are that the conditions may be of a permanent character, and it is upon the allegations, upon the evidence that has been adduced, under the instructions of the law, as to what you may consider on that behalf, that I will submit the case to the jury.

"Mr. Nelson: It is understood that we may have an exception without my making that tender?

"The Court: Yes, you may have an exception."

There was a verdict, followed by judgment for the plaintiff, and thereafter the defendant seasonably moved for a new trial on the ground of surprise and of error of the court in submitting to the jury the question of damages for permanent injuries. It was claimed that the defendant was taken by surprise as to any claim of plaintiff because of permanent injury, by reason of the fact that in the course of a correspondence with the plaintiff's counsel, occurring apparently before the action was begun, plaintiff's counsel, in answer to a request of defendant's counsel that defendant's surgeon be permitted to examine plaintiff with a view to ascertaining the extent of her injuries, had answered in effect that if defendant was making the request in good faith and in view to a settlement only, he would be willing to have his·client submit to such an examination, and further used the following language:

"In the first place, we are not making claim for a serious, permanent injury, although our client is not yet free from pain or inconvenience. Again, the injury was such that a physical examination at this time would not disclose much, and in the last place, if you have concluded definitely that there is no liability on the part of your client, and such examination, as you suggest, is not for the purpose of discussing in good faith some reasonable settlement, we would not care to consent. Such cases are not our forte, but the young lady is a sister of our stenog-

rapher and naturally came to us. We would much prefer to settle all such cases out of court, if it can be done satisfactorily, and we so informed Mr. Schulz, the manager of the Postal Telegraph Company, long ago. He considered the amount we named as reasonable, if there was any liability at all, and we also think so. The young lady was in the hospital for some time, and suffered severely for several weeks, besides being thrown out of employment by which she made her living."

Defendant's counsel answered that they were glad to note that plaintiff made no claim for permanent injuries, and, while denying any liability, said that in view of avoiding the expense of a trial they would recommend that their client settle the claim for a small sum, but would decline to pay the amount previously demanded by plaintiff. The motion for a new trial was overruled and defendant appeals, alleging as error the giving of the instructions excepted to, and the overruling of its motion for a new trial.                                AFFIRMED.

For appellant there was a brief submitted over the name of *Messrs. Dey, Hampson & Nelson.*

For respondent there was a brief prepared and submitted by *Mr. W. F. Magill.*

McBRIDE, J.—1, 2. It is settled in this state and by the great weight of authority in other jurisdictions that the permanency of an injury may be shown under a general allegation of damages without more explicit pleading: *Sigel* v. *Portland, R. L. & P. Co.,* 67 Or. 285 (135 Pac. 866); 13 Cyc. 189, and cases there cited. Counsel for defendant virtually concede this to be the law, but contend that plaintiff is estopped by her pleading to take advantage of this

general rule.   The particular sentence in plaintiff's complaint to which reference is made in the ingenious argument of counsel is this: After generally describing her injuries and stating that plaintiff's "knee would be weak for a long time, and that the patella will be more liable to dislocation than before said injury," the complaint avers that, "these conditions may be of a permanent character." Counsel for defendant contend in effect that plaintiff should be held to have negatived thereby probability or reasonable certainty.   While the allegation adds nothing which enlarges the scope of the proof that could legally have been adduced without it, it does not narrow or abridge it.   There are few words having so many distinct meanings as "may." It sometimes imports ability, competency, possibility, or probability: *Home Ins. Co.* v. *Peoria etc. Co.*, 78 Ill. App. 137–140.   Any of these attributes to this protean auxiliary verb may be true and taken at its full meaning without limiting the legal effect of an allegation of general damages.   That which is reasonably certain to occur is surely possible or probable. The pleading, if anything, was to the defendant's advantage, as it was thereby notified that plaintiff had in contemplation the introduction of testimony concerning the permanency of her injuries.   To construe the pleading as contended for by counsel for defendant would be to strain a point so as to attribute to plaintiff's counsel the improbable intent to do what was no doubt furthest from his mind when he drew the pleading, namely, to limit the scope of plaintiff's recovery.

The case of *Rugenstein* v. *Ottenheimer*, 70 Or. 600 (140 Pac. 747), is cited by counsel as sustaining the contention of defendant here, but that case does not,

in our opinion, conflict with the ruling of the Circuit Court in the case at bar. There, the contention was not that the pleading was insufficient or that the proof of permanent injury was entirely lacking. In that case counsel for defendant asked this instruction:

"Before you are warranted in allowing the plaintiff any sum by way of compensation for any alleged permanent injuries, if you should come to the question of damages, you must be reasonably certain, from a preponderance of the evidence, that the plaintiff has sustained permanent injury and disability, and it is not enough that you may believe that a permanent injury is possible."

This instruction the trial court refused, and gave nothing equivalent to it, thus leaving the jury free to find damages upon the theory that there might be a possibility of permanent injury. All that was said by Mr. Justice BURNETT in that case was with reference to the refusal of the court to give the instruction requested.

The testimony of the physician who attended the plaintiff in the Rugenstein case as to the probability of permanent injury was no stronger than the testimony of Dr. Short in the present instance, and yet this court held that it was sufficient to go to the jury.

The instruction of the court in the present case, as to recovery for alleged permanent injury, contained everything that the court rejected in the Rugenstein case, and more. In fact, the principal instruction on that subject was given at the request of the defendant, and fully stated the law. What was afterwards said by the court only emphasized and made more clear the law as contained in defendant's request.

3, 4. Referring to the motion for a new trial, it may be said that the refusal to grant a new trial is a matter in the sound discretion of the court, and will not be reviewed here, except for an abuse of that discretion. The statement plaintiff's counsel made in the course of the negotiations for a settlement of plaintiff's claim, to the effect that, "we are not making a claim for serious, permanent injury, although our client is not yet free from pain or inconvenience," was made pending an attempt to compromise the case, and was not binding either upon the plaintiff or her attorney in case no settlement was reached. The allegation in the complaint to the effect that some of plaintiff's injuries might be permanent was certainly some notice to defendant that in view of the necessity of a lawsuit plaintiff had changed her attitude in regard to asking for damages for permanent injuries; or it might even be that in the interval of time between the correspondence and the filing of the last amended complaint plaintiff had discovered that the results of her injuries were of longer probable duration than she had at first supposed.

We find no error in the record, and the judgment is affirmed.                              AFFIRMED.