Argued July 11, reversed and remanded July 24, 1917.

# STATE v. KEEP.*

(166 Pac. 936.)

**Criminal Law—Manner of Pleading.**

1. Under Sections 1467–1469, 1490, 1498, 1500, and 1501, L. O. L., prescribing practice as to pleading and demurring to an indictment, and providing that every plea must be oral and entered on the court's journal, stenographer's statement, preceding his report of the testimony, that at opening of trial defendant's counsel stated that defendant pleaded former acquittal of crime charged, is not proper evidence that plea was entered.

**Criminal Law—Former Acquittal—Ingredient of Later Crime.**

2. Where one from whom defendant has procured a note to be executed, secured by a mortgage on real estate to which the mortgagor has no title, by fraudulent representations sells it to another, defendant furnishing an abstract which he has changed so as to make it appear that mortgagor had title, he cannot, because of his prior conviction of conveying to mortgagor land in question without title, plead former acquittal to an indictment for obtaining money by false pretenses, since such conveyance was merely a preparatory crime not legally related to later crime nor an indispensable ingredient of it.

[As to former acquittal or conviction as a defense, see note in 11 Am. St. Rep. 228.]

**Criminal Law—Former Acquittal—Ingredient of Later Crime.**

3. The conviction of one crime will be deemed acquittal of another only where former transaction is necessarily involved, as a matter of law, as part of the subsequently completed crime.

**Criminal Law—Nolle Prosequi.**

4. Under Sections 1696, 1697, 1699, L. O. L., only misdemeanors may be compromised.

**Criminal Law—Nolle Prosequi—Authority to Allow.**

5. Under Sections 1704, 1705, L. O. L., district attorney cannot discontinue or abandon a prosecution for crime unless court, either

*On necessity of consent of court to entry of *nolle prosequi* in a criminal case, see notes in 35 L. R. A. 705; 45 L. R. A. (N. S.) 1123.

REPORTER,

of its own motion or on application of district attorney, in furtherance of justice orders action dismissed.

**Indictment and Information—Evidence Admissible Under Plea—Nolle Prosequi—Proof of Agreement.**

6. Under Section 1505, L. O. L., providing that all matters of fact tending to establish a defense to a charge in the indictment, other than plea of former conviction or acquittal, may be admitted under plea of not guilty, defendant may prove, under that plea to an indictment for obtaining money under false pretenses, agreement with district attorney of another county that if he pleaded guilty to crime of making a conveyance without title, which conveyance was a preparatory step toward obtaining money by false pretenses, all other prosecutions growing out of that transaction would be dismissed.

**Criminal Law—Nolle Prosequi—Authority to Allow.**

7. District attorney has no authority to make agreement, binding on grand jury of another county, with one indicted for making conveyance without title, that if he pleads guilty all other prosecutions growing out of same transaction will be dismissed.

**False Pretenses—Indictment—Description of False Token.**

8. On trial for obtaining money by false pretenses, under Section 1964, L. O. L., by procuring another to sell note secured by mortgage on real estate to which mortgagor did not have title, evidence that defendant tampered with abstract so as to make it appear he did have it must be disregarded where indictment does not mention abstract.

**False Pretenses—Sufficiency of Evidence.**

9. Evidence that payee of note which defendant procured to be executed and delivered to him, and which was secured by mortgage on real estate to which mortgagor had no title, without authority from or knowledge of defendant induced another by fraudulent representations to buy it, retaining the proceeds, is insufficient to sustain conviction for obtaining money by false pretenses.

**Criminal Law—Sufficiency of Evidence—Testimony of Accomplice.**

10. One cannot be convicted of obtaining money by false pretenses on the uncorroborated testimony of an accomplice.

**False Pretenses—Indictment—Variance.**

11. Obtaining of money by false pretenses cannot, under Section 1541, L. O. L., be proven by oral representations accompanying use of false token, where latter is not pleaded in the indictment, but only by some note or memorandum of false pretense in writing, either subscribed by or in the handwriting of defendant.

From Multnomah: GILBERT W. PHELPS, Judge.

Department 1. Statement by MR. JUSTICE BURNETT.

A lengthy indictment in this case charges Joseph R. Keep jointly with William C. Borchers with the crime

of obtaining money from Frank Van Stralen by false pretenses. Borchers was discharged from the indictment so that he could be used as a witness for the state. Keep appeals from a conviction on a verdict of guilty.

REVERSED AND REMANDED.

For appellant there was a brief with oral arguments by *Mr. Wilson T. Hume* and *Mr. John A. Mears.*

For the State there was a brief over the names of *Mr. George Mowry,* Deputy District Attorney, and *Mr. Walter H. Evans,* District Attorney, with an oral argument by *Mr. Mowry.*

MR. JUSTICE BURNETT delivered the opinion of the court.

From the record we glean what may be deemed the salient facts in the matter involved. Keep was promoting an irrigation project in Wasco County, and needed money to meet his pay-roll. About that time, without having any title to the same, he conveyed some land to his daughter, Emma M. Janin, and her husband, E. C. Janin. The daughter and her husband made a promissory note payable to Borchers for $3,000, and likewise executed a mortgage on the tract securing the note. With the note and mortgage Keep applied to Borchers to raise the money for him. Borchers had $1,500 on deposit in a bank. He went there, gave his individual note for an additional $1,500, depositing the mortgage and note as collateral. He then took the money he borrowed, added it to his own deposit and drew out $3,000 which he delivered to Keep less $300 brokerage. About the time the Borchers note fell due he advertised the Janin collaterals for sale. Van Stralen saw the ad-

vertisement and entered into negotiations with Borchers for the purchase of them, but exacted an abstract of title to the land included in the mortgage. Borchers in turn demanded such a document from Keep, telling him he was about to sell the Janin note and mortgage. In a few days aftewards Keep furnished one to Borchers which other testimony tended to show was tampered with after it had been issued by the abstract company. Borchers handed this with the Janin papers to Van Stralen in exchange for a cashier's check for $3,000 with which Borchers redeemed his own note at the bank and placed the remainder on deposit to his account. It is not pretended that Keep received any part of the money with which Van Stralen parted, and it is written large throughout the record without controversy that Van Stralen had no transaction or conversation whatever with Keep and never saw him but once and then not to speak to him. It appears by an exemplification of the record that Keep was convicted on a plea of guilty of the crime of making conveyance without title in the Circuit Court of Wasco County, previous to the filing of the indictment in this case. He contends that he was induced to withdraw his plea of not guilty in that case and to enter one of guilty of making conveyance without title based upon his deed to the Janins by the promise of the district attorney there that if he would do so, all other prosecutions growing out of that transaction would be dismissed, and that he accepted the promise, pleaded guilty, and served his penitentiary sentence in pursuance thereof. In the instant case with his plea of not guilty he claims to have put in the additional plea of former acquittal and that the court erred in refusing to allow him to give evidence of the alleged agreement with the state's representative in Wasco County.

1. We inquire first whether there is any authentic record of the plea of former acquittal. On arraignment, if the defendant require it, he must be allowed until the following day, or such other time as the court may deem reasonable, to answer to the charge. At the time appointed he may move the court to set aside the indictment or may demur or plead thereto. If he refuses to do either the court must enter a plea of not guilty for him. Both the demurrer and plea must be entered in open court either at the arraignment or at such other time as may be allowed the defendant for that purpose. If the demurrer be disallowed the court must permit the defendant at his election to plead, which he must do forthwith, or at such time as the court may allow: Sections 1467, 1468, 1469, 1490, 1498, L. O. L. There are three kinds of pleas, to wit, guilty, not guilty, and a former judgment of conviction or acquittal of the crime charged which latter may be interposed either with or without the plea of not guilty. Every plea must be oral and must be entered in the journal of the court: Sections 1500, 1501, L. O. L. The latter section prescribes the only official means by which we may ascertain the defenses offered by the defendant. The record before us of the court's transactions contains no mention whatever of a plea of former acquittal. The only allusion to such a thing is found in the stenographer's declaration, preceding his report of the testimony which is attached to the bill of exceptions, that when the trial began the defendant's counsel stated

"the defendant, Joseph R. Keep, pleads that he has already been acquitted of the crime charged in the indictment in the circuit court for Wasco County, Oregon, on the 22d day of July, 1913."

Strictly speaking, in the light of the statute we cannot regard this as proper evidence that such a plea was entered. Passing this, however, we proceed to consider the matter upon its merits.

· The contention of the defendant seems to be that as a matter of law the false conveyance by Keep to the Janins was a necessary part of the plot to obtain the money from Van Stralen and that while the state was entitled to carve out of the whole transaction as great a crime as possible it could carve but once and having convicted him of an essential part of the scheme it operated as an acquittal of all its other factors. It appears also to be his position that his dealings with the district attorney constituted a compact binding upon the state so that all the sequelae of the bogus deed were thereby obliterated. It is proper to state that the law officer of the state in Wasco County stoutly denies that any such agreement was made.

2, 3. In the first place the making of the deed to Janin was at best a mere preparatory crime and is not included in the subsequent offense of obtaining money under false pretenses. We might as well say that because a man was convicted of stealing from a blacksmith-shop a sledge-hammer and drill with which he afterwards robbed a bank safe, he should be immune from prosecution for the crime committed in the bank. It is only where the former transaction is necessarily involved as a matter of law as part of the subsequently completed crime, that the conviction of one will be deemed the acquittal of the other. However much it may be connected in point of fact the making of conveyance to Janin without having title bears no legal relation to the subsequent getting of the money from Van Stralen and the conviction of the former does not bar prosecution for the latter. The making of the

deed was not an indispensable ingredient of the crime of obtaining money under false pretenses. All allusion to it properly might have been left out of the testimony. The manufacture of bogus documents might have begun with the mortgage alone without reference to the conveyance.

4–7. Moreover, only misdemeanors may be compromised: Sections 1696, 1697, 1699, L. O. L. It is said in Section 1705, L. O. L.:

"The entry of a *nolle prosequi* is abolished; and the district attorney cannot discontinue or abandon a prosecution for a crime, except as provided in the last section,"

which latter is to the effect that the court either of its own motion or upon the application of the district attorney and in furtherance of justice may order an action after indictment to be dismissed. No such action of the court in the premises is offered in evidence. The defendant's only attempt was to prove the alleged treaty with the prosecuting officer. Even if this were admissible at all it could have been given in evidence under the plea of not guilty, under Section 1505, L. O. L., which is in purport that all matters of fact tending to establish a defense to a charge in the indictment other than the plea of former conviction or acquittal may be given in evidence under the plea of not guilty. The district attorney, however, had no authority to make any such agreement. He could not control the subsequent action of a grand jury in that county and much less in Multnomah County. Knowing the law as he must be presumed to have known it, the defendant was aware of the lack of authority on the part of the prosecuting officer. It may be true that he served his sentence consequent upon his plea and that perhaps

on proper showing to the court the conviction could have been set aside on account of the undue influence used to induce him to plead guilty; but that matter is *coram non judice*. The matter of former acquittal, therefore, must be laid out of the case.

8. As stated, the indictment is for obtaining money under false pretenses, of which it recites six: (1) That Janin and his wife were the owners of the land on November 15, 1912, the date of the mortgage; (2) that the mortgage was a valid lien thereon; (3) that the note represented an actual indebtedness from Janin to Borchers; (4) that the assignment by Borchers to Van Stralen was an actual *bona fide* assignment and transfer of a real promissory note and mortgage; (5) that Borchers was the lawful owner of the note and mortgage; and (6), that there was $3,000 due on the note and mortgage. No mention is made in the indictment of the abstract said to have been furnished by Keep to Borchers and by the latter delivered to Van Stralen. The indictment is framed under Section 1964, L. O. L., reading thus:

"If any person shall, by any false pretenses, or by any privy or false token, and with intent to defraud, obtain, or attempt to obtain from any other person, any money or property whatever, or shall obtain or attempt to obtain with the like intent the signature of any person to any writing the false making 'whereof would be punishable as forgery, such person, upon conviction thereof, shall be punished. * * "

It is also said in Section 1541, L. O. L.:

"Upon a trial for having, by any false pretense, obtained the signature of any person to any written instrument, or obtained from any person any valuable thing, no evidence can be admitted of a false pretense expressed orally and unaccompanied by a false token or writing; but such pretense, or some note or memoran-

dum thereof, must be in writing, and either subscribed by or in the handwriting of the defendant. * * ''

Adverting to Section 1964, it is apparent that the crime may be committed in two ways: (1) by the use of any false pretenses; and (2) by any privy or false token: *State* v. *Whiteaker*, 64 Or. 297, 302 (129 Pac. 534, 536). The indictment is based upon the first of these, charging the defendant with obtaining money by false pretenses and not by the use of any privy or false token. As laid down by Mr. Chief Justice WOL-VERTON, in *State* v. *Renick*, 33 Or. 584 (56 Pac. 275, 48 Cent. Law Journal, 390, 72 Am. St. Rep. 758, 44 L. R. A. 266), ''it is necessary to specify the false token in the indictment,'' citing 2 Wharton, Criminal Law, 1129. Whether or not, therefore, the abstract said to have been given to Borchers by Keep was bogus or had been tampered with and so amounted to a false token must be disregarded because it is not mentioned in the indictment. With it goes the only trace of Keep's liability in the matter for all that is attributed to him is that he furnished the abstract to Borchers. As pointed out further on it could only amount to a false token, not a false pretense, and there is no statement in the indictment of any false token.

9. Still, further, referring to the matter of false pretenses, as already mentioned no communication whatever was had between Keep and Van Stralen. The entire transaction by which Borchers induced the latter to part with his money was conducted by Borchers himself; and for his own benefit exclusively. It was important for him to raise the money with which to pay his own note to the bank. It is not pretended that he was securing funds for any of Keep's purposes and it is not intimated that Keep ever received any part of it. All the declarations made to Van Stralen

85 Or.—18

were uttered by Borchers in the absence of Keep and, so far as the testimony shows, without the semblance of his authority. No assent of Keep to the delivery of any of the papers by Borchers to Van Stralen is shown by the record. In brief, Borchers, having by virtue of a former transaction secured control of papers which might under some circumstances be incriminative of Keep, the former used them for his own advantage without authority from the latter. To sustain a conviction under such circumstances would be to say that Borchers might multiply criminal acts of the present defendant as often as he could negotiate a sale or pledge of the papers, all without Keep's knowledge or co-operation.

10. Van Stralen and Borchers testified concerning the transaction with each other. Another witness, Bolton, gave evidence about Keep having obtained an abstract from him and on the subject of alleged changes having been made in that document. Janin related the execution of the note and mortgage and his reception of the deed from Keep. This was substantially all the testimony of witnesses for the state and was received over the objection of the defendant as to the narrations of Borchers and Van Stralen that the declarations of Borchers were made in the absence of the defendant and without any showing of his consent or authority to make them, and that there was no testimony to corroborate Borchers who was an accomplice, as the defense contends. At the close of the testimony for the state the defendant moved to strike out all this testimony; but the motion was denied. A motion for a directed verdict was also denied. It is plain that Borchers was either an innocent agent, if such a term may be employed, or an accomplice. A criminal may engage in the accomplishment of his purpose someone

who has no knowledge of the unlawful business and who may innocently carry out the criminal enterprise designed by the defendant. There is, however, no line of testimony showing in any manner that Keep authorized any transaction between Borchers and Van Stralen. Borchers, therefore, cannot be held up as an innocent agent of Keep. On the contrary all the testimony is to the effect that he was acting for himself for the purpose of raising money with which to pay his own note and to reimburse himself for what he had already delivered to Keep on the former transaction. Viewing Borchers as an accomplice on the other hand there is nothing to corroborate his testimony respecting Keep. The motion to strike out the state's evidence as indicated should have been allowed.

11. Still further, considering the fact that the statute is aimed against two methods of committing the crime in question, namely, by means of false pretenses, as well as by means of any privy or false token, and remembering that there is no allegation of any false token, it is plain that under Section 1541, L. O. L., the false pretense, as such, must be proved by some note or memorandum thereof in writing and either subscribed by or in the handwriting of the defendant. The principle is that if the prosecutor would rely upon a false token he must plead it. He may then prove the oral representations accompanying the use of the token as a means of accomplishing the fraud. On the contrary if he pleads a false pretense he must sustain it by the only proof admissible under the statute which is some note or memorandum thereof in writing subscribed by or in the handwriting of the defendant. The state cannot allege one species of the offense and undertake to prove another. It is hornbook law that the proof must correspond to the allegations. Referring again to the averment of the false pretenses, there is no

writing whatever on the part of Keep introduced in evidence in the case. Within the meaning of the statute he made no provable pretenses on the subject charged in the indictment. The nearest approach to proof of this was an exemplification of the record of the deed from Keep to the Janins, but that was typewritten except the signature of the authenticating officer. That certified copy and the abstract were the only writings in evidence containing even the name of . Keep. So far as the case before us is concerned the jury never saw a specimen of the handwriting or signature of Keep. The testimony was therefore wholly insufficient to justify conviction of the defendant of the offense as charged. The judgment is reversed and the cause remanded for further proceedings.

REVERSED AND REMANDED.

MR. CHIEF JUSTICE MCBRIDE, MR. JUSTICE BENSON and MR. JUSTICE HARRIS concur.